IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BUFF DIVISION

JOSEPH CRAWFORD                                                                                PLAINTIFF

V.                                         CASE NO.: 5:14CV00256 BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                                DEFENDANT

## ORDER

Plaintiff Joseph Crawford has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits and supplemental security income. Both parties have submitted appeal briefs and the case is ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Papesh v. Colvin*, __ F.3d __, 2015 WL 3396586, at *4 (8th Cir. 2015); see also 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). In assessing the substantiality of the evidence, the Court has considered evidence that detracts from the Commissioner's decision as well as evidence that supports it.

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

On May 11, 2006, Mr. Crawford alleged he became limited in his ability to work from back and shoulder injuries and pain in his hips. (SSA record at 116, 119, 126, 173, 512) After the Appeals Council remanded the case twice, on March 1, 2012, the Administrative Law Judge[2] (ALJ) conducted a hearing and concluded that Mr. Crawford had not been under a disability within the meaning of the Social Security Act at any time from January 19, 2005, his alleged onset date, through April 27, 2012, the date of his decision. (*Id*. at 20, 29, 46-48, 85-86) On May 7, 2014, the Appeals Council denied Mr. Crawford's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id*. at 7-10) Mr. Crawford then filed his complaint initiating this appeal. (Docket #2)

At the time of the hearing, Mr. Crawford was 41 years old and lived with his mother. (SSA record at 546, 556) He had an eighth-grade education in special education type classes, could not read, could not add or subtract very well, could not make change, and had never held a job that required any paper work. (*Id*. at 547-48) He had past work as a farm hand, farm worker, and tire repairer. (*Id*. at 544) He had also driven a farm truck. (*Id*. at 545) He stopped working when he hurt his back while pulling a tire off the front end of a truck. (*Id*. at 555)

---

[2]The Honorable David L. Knowles.

The ALJ followed the familiar five-step evaluation process in determining that Mr. Crawford was not disabled.[3] The ALJ found that Mr. Crawford had not engaged in substantial gainful activity since his alleged onset date. (*Id*. at 20) He found that Mr. Crawford had the following severe impairments: degenerative disc disease of the lumbar spine at L4-5 and L5-S1; degenerative disc disease of the hips and shoulders; and borderline intellectual functioning, learning disorder, and personality disorder. (*Id*. at 20-22) He further found that Mr. Crawford did not have an impairment or combination of impairments that met or equaled a Listing. (*Id*. at 22) He judged that Mr. Crawford's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not totally credible. (*Id*. at 25-27)

Based on his findings, the ALJ concluded that during the relevant time period Mr. Crawford retained the residual functional capacity (RFC) for sedentary work with the mental ability to understand, remember, and carry out simple job instructions up to a level of SVP 3; make judgments in simple work-related situations; respond appropriately to co-workers/supervisors; and respond appropriately to minor changes in the usual work routine. (*Id*. at 24-25)

---

[3] Was the claimant engaged in substantial gainful activity? If not, did she have a severe impairment? If so, did the impairment (or combination of impairments) meet or equal a listed impairment? If not, did the impairment (or combination of impairments) prevent the claimant from performing her past relevant work? If so, did the impairment (or combination of impairments) prevent the claimant from performing any other jobs available in significant numbers in the national economy? 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

The ALJ found that Mr. Crawford was an illiterate, younger individual. (*Id*. at 28) Based on testimony from a vocational expert, the ALJ concluded that Mr. Crawford could not perform his past relevant work, but that he could perform other jobs available in the national economy such as PDX operator, surveillance system monitor, and escort vehicle driver. (*Id*. at 28-29) Thus, the ALJ concluded that Mr. Crawford was not disabled. (*Id*. at 29)

*Listed Impairment*

Mr. Crawford complains the ALJ erred by finding that he did not meet listing 12.05C for mental retardation. Additionally, Mr. Crawford argues the ALJ should have further developed the record related to his mental impairments, as ordered by the Appeals Council, by obtaining a medical expert to assess his mental impairments. The Court agrees.

Listing 12.05 states, "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05; *Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014). These requirements are mandatory. *Lott*, 772 F.3d at 549 (quoting *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006)). In addition, one of four sets of requirements, A, B, C, or D, must also be satisfied. 20 C.F.R. Pt. 404, subpt. P, app. 1 § 12.05.

Listing 12.05C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id*. § 12.05C.  "For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." *Id*. § 12.00A.  Thus for Mr. Crawford to meet listing 12.05C, he would need the following: (1) a valid verbal, performance, *or* full scale IQ of 60-70; (2) an additional "severe" impairment; and (3) evidence supporting the onset of intellectual and adaptive functioning disability before age twenty-two.  *Lott*, 772 F.3d at 750.

Mr. Crawford's mental condition was evaluated on three occasions.  Barry S. McDonald, Ph.D. completed a consultative examination of Mr. Crawford on October 19, 2005.  Dr. McDonald did not administer an IQ examination, but estimated Mr. Crawford's IQ was in the 71-79 range.  He diagnosed adjustment disorder with depression; dyssomnia NOS; polysubstance abuse, in partial remission; and occupational problems.  (*Id*. at 401)  In completing an evaluation of Mr. Crawford's adaptive functioning, Dr. McDonald indicated that he had clearly identified two or more areas with significant limitation in adaptive functioning; was undecided whether his functioning was consistent with a diagnosis of mental retardation; and believed Mr. Crawford would be unable to manage funds without assistance.  (*Id*. at 404-05)

On November 15, 2005, a state agency physician, Jerry Henderson, completed a psychiatric review of Mr. Crawford and found that he had significantly sub-average general intellectual functioning with deficits in adaptive functioning manifesting during the developmental period. (*Id*. at 378-96) He found the evidence demonstrated an onset of mental retardation before the age of 22, but concluded that Mr. Crawford could perform unskilled work. (*Id*. at 382, 390)

George M. DeRoeck, Psy. D. performed a consultative examination of Mr. Crawford on December 29, 2006. Dr. DeRoeck performed an IQ examination that resulted in a verbal score of 69; a performance score of 91; and a full scale IQ of 77. He noted there was a "significant split between verbal and performance abilities with deficits in abstract reasoning, numerical reasoning and comprehension/social awareness." (*Id*. at 506) He also noted "significant intersubtest scatter reflective of probable learning disability in the area of comprehension/language arts." (*Id*. at 506) He reported that Mr. Crawford had a history of polysubstance dependence beginning in adolescence, and he appeared at the appointment unkempt and unshaven. (*Id*. at 509) Dr. DeRoeck assigned Mr. Crawford a global assessment of functioning (GAF) score of 50. (*Id*.)

Mr. Crawford argues that he met the requirements of 12.05C because Dr. DeRoeck assessed him with a valid verbal IQ score of 69; he has additional severe physical impairments; and there is evidence supporting the onset of intellectual and adaptive functioning disability before age twenty-two. The Commissioner counters that the ALJ

properly rejected the IQ score because it was inconsistent with Mr. Crawford's work history, his stated activities of daily living which included toileting, eating, dressing, hunting, fishing, and bathing.[4]  #20 at p. 8 (*Id*. at 24)

Here, there is a lack of medical evidence to support the ALJ's finding that Mr. Crawford does not meet listing 12.05C.  The Appeals Council acknowledged this in January, 2009, when, after reviewing Dr. DeRoeck's report, it remanded the case to the ALJ with instructions to obtain the assistance of a mental health medical expert to, "assist in assessing the nature and severity of the claimant's impairment(s)." (*Id*. at 47)  The ALJ did not engage an expert, however, to assess the severity of Mr. Crawford's mental impairments.  This was error.

The Commissioner points to *Cox v. Astrue*, 495 F.3d 614 (2007), to support the ALJ's rejection of Mr. Crawford's IQ score.  In *Cox*, the Court determined that Ms. Cox's diagnosis of mental retardation was not consistent with the record.  The Court found that the consulting physician, who had diagnosed mental retardation, did not intend to, because her findings did not include a limitation in two or more areas of adaptive functioning and were more consistent with borderline intellectual functioning. *Id*. at 618.  Additionally, the Court noted that Ms. Cox did not have any physical problems; was able to live with and take care of her three children, including a child who suffered with severe

---

[4]Mr. Crawford testified to hunting in a deer blind about 100 yards from where his cousin lives and fishing with his cousin or his cousin's wife. (*Id*. at 550)

mental impairments; had worked as a CNA; had reported caring for various family members; and had supported her children. *Id*.

Here, Dr. McDonald diagnosed Mr. Crawford with two or more areas of limitation in adaptive functioning (*Id*. at 404), and Dr. Henderson found deficits in adaptive functioning manifesting before age 22. (SSA record at 382, 404)  Further, while Mr. Crawford did have prior work as a farm worker and tire repairer, unlike Ms. Cox, Mr. Crawford was unable to read, perform basic math, or live independently.  Dr. DeRoeck and Dr. McDonald both noted Mr. Crawford's history of drug and alcohol problems, difficulty dealing with people, guarded presentation, and unkempt appearance.  (*Id*. at 397-400, 505, 507-09)  Unlike in *Cox*, here there is a lack of substantial evidence to support the ALJ's rejection of Mr. Crawford's IQ test results.

*Conclusion*

After consideration of the record as a whole, the Court concludes the decision of the Commissioner is not supported by substantial evidence.  The Commissioner's decision is reversed and remanded for action consistent with this opinion.  This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

The oral argument hearing scheduled for July 23, 2015, is canceled.  DATED this 13th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE